311-279 Joseph Construction Company, appellant by John O'Brien, with the support of Trustees, athletes, and by Clifford Cooperville. Good afternoon. Mr. O'Brien, to the police and court, counsel. The first issue I would like to address, or I'd like to focus on, because the trial court basically took and said that count one of our complaint for injunctive relief could be reworded as a contract claim. And the declaratory judgment action in count two, likewise, could be reworded as a contract claim. Then took the contract claim and said, well, that's barred by the form selection clause. So I think the first error that I want to address is the notion that there was a valid form selection clause in this contract. There was not. A form selection clause, by definition, is one where the parties agree that if they get involved in a dispute, they will litigate it in a particular form, number one. Clearly, any action brought by Governors State University against Joseph Construction Company would not and could not have been brought to the Court of Claims. I've read the Court of Claims Act carefully, and it says nothing about having jurisdictional reactions brought against Joseph Construction Company, whether by a state agency or other. But second and more importantly, it is not a form selection clause at all. It really purports to be a jurisdiction conferring clause, if you will. The Court of Claims has limited jurisdiction, and it does not have jurisdiction of injunctive claims, claims for injunctive relief such as count one. It does not have jurisdiction of claims for declaratory relief as sought in count two. And I humbly submit, it does not have jurisdiction of contract claims against state universities anymore. In this regard, as you know, or I think you know, you're writing on a rather clean slate. The First District has said that the language in Public Act 89-4, which took effect in 1996, meant what it said. Not terribly shocking, but they were urged to hold otherwise. When the University of Illinois and the City of Chicago became involved in a dispute, and the City of Chicago filed suit in Circuit Court, and the First District of Color Courts says no, the provision that says that the University of Illinois is a body of politic incorporated with the capacity to soon be sued except the tort claims for the Court of Claims means what it says. You can sue the University of Illinois in Circuit Court if your suit is not a tort claim. It doesn't seem a particularly remarkable proposition except for the fact that the trial court here apparently didn't recognize that or didn't recognize that the so-called form selection clause was really attempting to expand the jurisdiction of the Court of Claims. And with all due respect, the Second District Appellate Court didn't seem to realize that an association of big kind at universities versus Northeastern. The plaintiff's position is essentially that PA 89-4, when it rewrote the state university system entirely and conferred financial independence upon them and conferred binding independence upon them and declared each of the universities to be a separate body of politic incorporated with the power to sue and be sued and with the exception of tort claims as far as the soon be sued part, they meant what they said. I think we can all agree this is an action that is not a tort action. So therefore it does not belong in the Court of Claims. Or so it would seem except that the trial court seems to have ruled otherwise and the university is urging the contrary position based entirely or almost entirely upon pre-1996 case law with the exception of the mid kind at universities case which itself relied upon pre-1996 case law. No court appears to have done any kind of, no appellate court appears, or the Supreme Court appears to have done any kind of careful analysis of whether the pre-1996 case law and the rationale underlying it, talking about for instance Williams and Ellis are the Supreme Court cases that are most often cited and the Cain and Raymond versus Gadsden Lehman cases are appellate cases. Whether the logic underlying those cases survives the complete revision, if you will, of the state university system effected in 1996. If you look at the rationale underlying Williams and his progeny, they talk about the various factors that make the medical district commission in that case but also the state universities in their pre-1996 existence, so to speak, arms of the state. They have to hire and fire in accordance with the state personnel code, the civil administrative code applies, governor's consent to convey real estate, all of these factors were considered as being factors making them like an arm of the state. Almost all of the factors listed by the courts are now gone. Number one. Number two, it's interesting how the Williams case sort of got turned on its head. Williams was a tort case first and foremost and the issue there was whether it was a violation of due process to say here's this separate entity but people who are injured by it have to go to the court of claims where anybody else gets injured in a tort situation and go to circuit court. And so the Supreme Court was really charged with the business of deciding is the medical district commission enough like a state entity that it's permissible to shift tort cases over to the court of claims. I mean clearly if the legislature had passed a law saying tort actions against Ford Motor Company have to go to the court of claims, somebody would have said wait a minute, no, they're not the state, what are you talking about? So they had to say all right, well, is the medical district commission enough like a state agency or a state entity or an arm of the state, whatever phrase they want to use, to justify sending cases off to the court of claims? And the answer they came up with was yes and they listed a number of factors, gubernatorial appointment of members of the board, power government domain, et cetera, et cetera. And that analysis was later relied upon to say that anybody who has these or some of these factors becomes an arm of the state for contract purposes. That is basically turning the analysis on its head or stretching it in at least one person if you rather are torturing a city. The key factor that needs to be looked at too is in Ellis, as in the other cases where sovereign immunity has been found in the contract context, it says that the, for instance, in Ellis the university was immune from to the extent that a claim would subject the state to liability and adversely affect the rights of the state. Now the importance of PA 89-4 is that universities no longer bind the state. Indeed, ironically, the only way that this claim would become a charge against the state would be if we did go to the court of claims because it's from a separate state fund, the court of claims judgments are paid. The governor of a state university operates independently, has its own bank accounts, its own bonding authority. The act authorizing it to issue bonds says go to the appropriate circuit court if you're a bond holder and you're not paid or whatever. And of course the enabling act for the university itself says soon be sued, body politic and corporate. The same language that the legislature uses for school districts, library districts, municipalities, local governmental units in general. There simply seems to be no principled basis to look at this language and to look at the language of the court of claims act and say, where the court of claims act says contract actions against the state toward action in section 8B and toward actions against the state in 8B and also toward actions against the governor of the state and various other universities, the medical district commission and so forth. Why would they exhaustively list the entities in subparagraph D about tort claims and not list them also in subparagraph B? If they felt that the term state encompassed the state universities and the medical district commission and the Illinois math and science academy, they didn't need to put the names of all those entities in 8B, did they? They could have just said tort claims against the state, just as they said contract claims against the state in 8B. The vastly different language in the two provisions suggests that vastly different intentions existed. The contract actions against the state, you want to sue the Department of Public Aid, the Department of Corrections, any other number of state departments, you go to the court of claims. If it's not the state, you go to circuit court. If you have a tort claim against the state, you go to the court of claims. But you also go to the court of claims if you have a tort claim against these other entities, which clearly the legislature did not think were the state or they wouldn't have listed them separately. So it is, it just seems to me that it's abundantly clear that the legislative amendments by 89-4, the language used, created contract liability and created circuit court jurisdiction and excluded court of claims jurisdiction for contract claims against the state universities. Now the other thing the trial court did was that she said that the count 1 and count 2 can simply be reworded as they're just warmed over contract claims. The problem with that is those are claims for declaratory and injunctive relief of the very same kind in nature as were present in the Senn Park case, in the Peoria Board of Education versus Sanders case, and in the biomedical versus trainer case. All of those cases involved cases that could easily, in fact I think the dissent by Judge Woodley in one of the cases said we're really issuing an injunction to keep the public purse strings open. And so it could be argued, but the point is the court allowed injunctive claims, and that's all we're seeking in count 1 is an injunction saying don't tear up the floor in the shower rooms, don't spend our money hiring somebody else to do non-contract work, I'm sorry, to do work that is not within the scope of our contract until we have a chance to resolve this and figure out if our work is truly as compliant as conceivably possible under the circumstances of the condition of the premises. And similarly in the declaratory claim we're not asking for a declaration, put it this way, in the amended complaint we're not asking for a declaration that they owe us the money or that they're in breach of contract. We simply want a declaration that the work as performed is compliant to the extent possible with the contract. I mean I don't want to get heavily into the facts here, but the point is there is no way you can make water flow uphill. There is a solution to the problem that the university is complaining about, but the solution is to do work that was not within our scope of work, which is, I think the term is beadblasting, you basically modify the substrate so that it's possible to then create a different slope toward the drain than what was there now. Our job, our contract said tear out the old tile, put in new tile. We did that, and we didn't just do that, but when it started pooling in a few places we tore it all out, and we did the best we can under the circumstances to prepare the substrate differently and so on and so forth, put down a new tile, again, no extra charge to the university, and wound up with an awfully good result. There's only one little area in each shower room where there's a little bit of water accumulates. Okay. Let me ask you this, because it may have nothing to do with anything, but from a practical standpoint, is this whatever, any remediation already been done, or is this an injunction at this point? Well the injunction would be to keep them from destroying our work until a determination can be made by the appropriate tribunal that as you say, most of the work has been done. But you know whether that's, just out of curiosity, whether the work is, whether they've already torn it up. No, they haven't, as far as we're aware. Okay. We've gotten the effect of the injunction without the injunction, I guess. They've enjoined themselves, if you will, or restrained themselves. So no, there is no change in the status quo to date, as far as we're aware, and I'm pretty sure my client would know. So that basically is our position. Are there any other questions from any members of the panel? The other thing, the final thing I guess I would say, although I know I've got a rebuttal period, is that I would ask this panel not to remand the case, not to remand this case just to allow the filing of our medical complaint. I do think that if you feel our original complaint was too much of a claim for breach of contract and you feel that universities are not subject to contract claims, that the amended complaint should be allowed to proceed. But, you know, I would ask that the court not just remand it to allow the filing of the amended complaint without also commenting upon whether, thank you very much, the revised, the amended complaint is also barred by sovereign immunity because otherwise, you know, as much as I really like the architecture here, I might be back here again within a year appealing a similar ruling. And I appreciate your company, love the building, but, you know, I'd like to have the trial court address this and not have to come back after a relatively pure victory here. Thank you all. Okay, thank you. Mr. Berlow. May it please the court. My name is Cliff Berlow. I'm here on behalf of the Board of Trustees of Governor State University and Tracy Sullivan, the Director of Procurement for Governor State. Just as a bit of background here, until 1996, every state university in Illinois was represented and overseen by a single Board of Governors of state colleges and universities. I think it is common ground between the parties here that the old Board of Governors was an arm of the state and could only be sued in the court of claims. I think that the Illinois Supreme Court's 1984 decision in Ellis really removes any doubt there. So it seems to me that the core question before the court here is whether by doing away with the old Board of Governors, the General Assembly met in creating these individual Boards of Trustees for each university, the General Assembly meant to reverse course and essentially restructure the entire state university system such that the state universities are no longer arms of the state. And I think a comparison between the old Board of Governors law and the current Governor State law provides a very clear answer to that. Statutes are virtually identical. They both provide, they both create a Board that is deemed a body politic and corporate. They both allow that Board to sue and be sued. They both allow that the Board can enter into contracts. They both allow that the Board can create, can incur debt, but that the size of that debt will be limited by the size of the General Assembly's annual appropriation. They both have a corresponding bond law. The bond laws themselves are absolutely indistinguishable. If you ran a red line comparing these two laws, you would see only a very few cosmetic differences. There's only one true substantive difference between the old Board of Governors law and the current Governor State law, and that relates to the accumulation of tuition and fees, which I'll get to in a moment. But I think for the court to accept the plaintiff's argument, it has to accept that that one change was so globally significant that it effectively undid what was a half century of unbroken precedence, stating that state universities are arms of the state. Now, with respect to the one difference, under the Board of Governors system, every university had its own bank account, and the Board of Governors had a bank account. Now, with respect to certain financial items, specifically things like alumni contributions, government grants, research grants from private institutions, those stayed within the college's bank account. But other fiscal items such as tuition, laboratory fees, and library fees went over to the old Board of Governors. When they did away with the Board of Governors, they obviously did away with the Board of Governors' bank account. And so the General Assembly had to decide, what are we going to do with the tuition and these various fees? And what the General Assembly, I think, reasonably decided to do was allow each college to keep that money. But I don't think that that in and of itself reaches the standard that the plaintiff is required to meet in order to demonstrate that the university is not an arm of the state. That standard is independence and autonomy. And I don't think, given all of the characteristics that exist under the near carbon copy of the old Board of Governors statute, meets that standard. The Board of Governors' state, seven of the eight members are appointed by the governor and subject to Senate approval. The General Assembly created the institution. The eighth member is an elected member of the student body. And under the old Board of Governors system, they have elected student representatives as well. Under the old, they have the power of eminent domain. They're subject to the Eminent Domain Act. Their employees are held to the Civil Service Code and they're members of a state retirement program. These are not characteristics you would normally associate with an entity that isn't totally autonomous and independent of the state. The examples of the plaintiff's sites of local institutions have no bearing and no relevance here. For the basic reason that municipal corporations, local entities, going back for almost two centuries of 11th Amendment law and since we've had the Immunity Act here, have always been treated categorically different because local entities are not state entities. There is a dividing line there that's based on principles of sovereignty and federalism. So the idea, and I think that to suggest that there is financial independence here, overlooks any number of factors. Last year there was a $26 million appropriation from the General Assembly to Governor State University. There are appropriations every year in about that same amount, and I checked what it is this year, to Governor State University. In order to get that, the university has to submit a request to a state agency, the Illinois Board of Higher Education. The board reviews that, submits a recommendation to the governor and to the General Assembly, and then ultimately they're at the mercy of the General Assembly and the governor to award that appropriation. In addition, they have to submit an annual capital expenditure plan so that the state is able to monitor what the university plans to spend its money on going forward three years, and it's continually updated. And Section 1545, subparagraph 5 of the Act, bills certain salaries of university employees and certain expenses directly to the state treasurer. Again, these are not the characteristics of a completely autonomous, independent entity. And so it seems to me here that we have a long line of precedent, we have a very clear status here, and what the plaintiff is asking for borders on being completely unprecedented. The best case for the plaintiff that he cited in his brief is a 1943 decision from the Illinois Supreme Court, Berry, in which the court, in essence, said that that case, you're right, the University of Illinois is not part of the state,  were to have the potential to adversely impact the interest of the state, then it would be barred by sovereign immunity. That's not much of a peg to hang your hat on. So it seems to me that we have, actually, a relatively straightforward case. With respect to the so-called equitable claims here, I think they are really, truly, genuinely, just breach of contract claims that are masquerading as something else. Because in order for the plaintiff to succeed on any of them, the plaintiff would have to establish the elements of a breach of contract. That there was a contract, that the plaintiff performed, and that the university breached the contract. So to say that these are injunctive claims doesn't really get, in simply phrasing them and styling them as a declaratory judgment, which actually explicitly asks for a declaration on all three elements. And an injunctive claim that essentially asks for an injunction ordering expectation damages, I think, strains credulity. And finally, with respect to your question, Your Honor, just for what it's worth, all those preliminary injunction claims are moved. I mean, it's off the record, it's outside the record, but you did ask. Because the shower has been repaired, the tile has been repaired, it is working perfectly fine. So the idea that the plaintiff could sustain any of those preliminary injunctive counts at this stage is simply incorrect. Are there any additional questions here? Just one about the counsel points out that the two sections and the difference in the language versus contract claims or court claims specifically and the other. Has that changed? Well, no, that hasn't changed. That's something that's made explicit in the Mid-Continent Universities case, and it's one I can make explicit right now. Under the same statute that the Ellis Court considered regarding the Court of Claims, the Court of Claims Act, the only difference between what the Ellis Court considered in 1984 and now is that where it used to say Board of Governors, it now says Board of Trustees of Governor State University. Otherwise, the statutes are indistinguishable. So in essence, the plaintiff is trying to revisit an argument that was rejected by the Illinois Supreme Court almost 30 years ago. And it's an argument that was raised many, many years before that, and no court has ever accepted it. And I think there's good for good reason here. I think that language really is more clarifying than sort of an exclusio unis principle. The question with regard to contracts claims is whether an entity is an arm of the state. And I think that when you go through and examine the characteristics of a university, a state public university, it's very clear that one of those universities is part of the state. And I don't see a lot that can be gleaned from that provision by itself without any other argument of substance. All right, I urge the court to affirm. All right, thank you. Thank you. Mr. O'Brien, any rebuttal? A couple of items, Mr. Wright, thank you. First of all, while my opponent may feel it's very clear that the university is an arm of the state, the Supreme Court in Barrett thought otherwise. They said that the University of Illinois, and it was, as counsel points out, operating in essentially the same language as the Board of Governors universities were in those days, was not an arm of the state. Similarly, when we talk about the financial autonomy, the key difference that counsel asked the court to gloss over, and I'm asking you not to, is that under the Board of Governors system, any money that the Governor State University had that was allocated to it either by funds from the state legislature or whatever that weren't spent went back to the state legislature. Now any funds allocated to it by the state legislature, as well as the lion's share of the funds that come in, counsel talked about, oh, it's a small thing, tuition and fees. Well, tuition and fees are, of course, probably the largest single source of revenue for a university, particularly a public university. It doesn't receive large endowments from alumni necessarily, the way some private universities do. They keep, at the end of the year, if they haven't spent it all, they keep under the old system, at the end of the year, if they didn't spend it all, it went back to the state treasury. Very significant difference, because if you took a dollar out of those funds today, you're taking it from the university. If you took a dollar out of those funds pre-1996, you were taking it from the state treasury. And if you go back to Ellis and look at what Ellis stands for, you can't assert claims that will affect the state treasury. Clearly, that level of autonomy and that level of independence is very significant for Ellis purposes and for sovereign immunity purposes. We are not asserting a claim against the state of Illinois or a claim that the state of Illinois will have to pay. We're asserting a claim against GSU that it will have to pay from its own funds. As I think I pointed out, ironically, if we went to the court of claims, then and only then would the state treasury be affected by the outcome of our claim. The other thing that the council suggested is that the statutes were virtually identical. I do not believe that there was a provision in the bonding laws under the Board of Governors system that allowed actions in the circuit court. Certainly there was money appropriated to the university, as there is now, but the point is, the council pointed out $26 million was appropriated to Governor State University last year by the legislature. Fine. Some multiple of that was appropriated to the Chicago Board of Education, to, I'm sure, the city of Chicago, and to a number of other local governmental units, all of which are clearly not subjected toward immunity. The council talked about how local entities are not state entities. Well, they're all created by the state. This is what I'm trying to explain, is that for legal purposes, the Board of Trustees of one of the state universities is in no apparently different position than a municipality, a school district, a fire protection district, a mosquito abatement district. We have some of those in Cook County. And if they're going to get money from the state, of course they have to submit a budget or a capital expenditure plan. School districts do this all the time. Municipalities do it all the time. This is nothing that is unique to the state university system. So I think it's very clear that the net effect of the 89-4 amendments was to separate the universities, if you will, from the state treasury and to create a scenario under which only funds that the legislature chooses to appropriate from the state treasury to the universities, those are the only funds that the university, that's the only obligation, if you will, upon the state treasury is what the legislature appropriates every year. So again, I would ask that the court reverse and direct the court to allow at least the filing of the amended complaint and make clear that this is not barred by either a so-called form selection clause or severed immunity. Thank you all very much. Thank you, Mr. O'Brien. And thank you, Mr. Berlow. This matter will be taken under advisement. Written disposition will be issued.